MURRY, Respondent, *v.* BURRIS ET AL., Appellants.

**1. Forcible Entry and Detainer — Statute—Construction —Character of Possession.**

The design of the forcible entry and detainer statute is to furnish one entitled to the possession of land a summary remedy to recover the same as against a mere trespasser or intruder. In such action the defendant may show the character of the plaintiff's possession on which a recovery is sought, also the character of his own right to the premises in controversy. While the language of the statute gives a right of action for a wrongful entry upon another's actual possession, it must not be construed to mean a possession obtained by force, and so held against the rightful claimant, nor is a mere " scrambling " possession as against him sufficient to maintain the action.

**2. Justices of the Peace—Jurisdiction—Actions Involving Title.**

In an action in a justice's court the defendant interposed an answer raising an issue of title and offered proof under it. Sections 10, 37, Justices' Code, provide that when the title or boundaries of real property in any wise come in question the case shall be certified to the district court. *Held,* upon the offer of proof the jurisdiction of the justice ceased and the judgment afterward rendered was void.

**3. Same — Appeal — Effect.**

That appealing in such a case is in effect certifying the case to the district court, as applied to the latter's jurisdiction,— doubted.

(Argued October 10, 1888; reversed October 13; opinion filed February 12, 1889.)

APPEAL from the district court, Lawrence county ; Hon. C. M. THOMAS, Judge.

*McLaughlin & Steele,* for appellants.

Plaintiff's entry was unlawful from the beginning. 3 Blackst. 171. The owner of land, wrongfully kept out of possession, may, if he can, regain and maintain his possession. McDougal v. Sitcher, 1 Johns. 42 ; Hyatt v. Wood, id. 157, 158 ; Ives v. Ives, 13 id. 235 ; Smith v. Burtis, 6 id. 218 ; Jackson v. Farmer, 9 Wend. 201, 203 ; Warren v. Warren, 17 id. 257 ; Parsons v. Brown, 15 Barb. 590 ; Gyre v. Culver, 47 id. 592 ; Sage v. Harpending, 49 .id. 175 ; Wood v. Phillips, 43 N. Y. 152 ; Bliss v. Johnson, 73 id. 529 ; Tribble v. Frame, 7 J. J. Marsh. 599, 23 Am. Dec. 439 ; Com. v. Dudley, 10 Mass. 409 ; Pennsylvania v. Robinson, Addis. 14, 17 ; LaFrombois v. Jackson, 8 Cow. 603 ; Orser v. Storms, 9 id. 687 ; Langton v. Potter, 3 Mass. 215 ; 4 Kent* (12th ed.), notes *c* and 1.

This being the law, the court erred in its rulings upon the evidence. Further, it was proper to show the character of Murry's possession and O'Neill's prior peaceable possession. 3 Blackst. 176. Title and right of possession is a legitimate subject of inquiry in this action. These statutes are intended to prevent the use of force and violence, not a party's regaining his property in a peaceable manner. Restoration cannot be had by an intruder as against the lawful owner. People v. Field, 52 Barb. 211, 1 Lans. 232. The owner had the right to repossess himself of his property. Langdon v. Potter, 3 Mass. 215 ; Hyatt v. Wood, 4 Johns. 158 ; Orser v. Storms, 9 Cow. 683 ; Livingston v. Tanner, 14 N. Y. 64 ; Newton v. Harland, 1 Mann. & Gr. 644 ; 4 Kent Com. 118 (12th ed.), notes *e* and 1 ; People v. Field, 1 Lans. 239, 240.

In the absence of the occupant, the owner having the right of possession, may enter by forcing open the door, though the occupant expects to return. Mussey v. Scott, 32 Vt. 82 ; People v. Field, *supra;* 2 Wat. Tresp., §§ 1171–1173 ; 17 Wend. 263 ; Hoffman v. Harrington, 22 Mich. 52 ; 2 Starkie, Ev. 330. Plaintiff must show possession or a right to it. Yorgensen v. Yorgensen, 6 Neb. 383 ; Houghtailing v. Houghtaling, 56 Barb. 194. There was error in rejecting the lease and deed. Thompson v. Smith, 28 Cal. 532 ; Dickenson v. Maguire, 9 id. 49 ; Shelby v. Houston, 38 id. 422.

*Martin & Mason* and *Van Cise*, for respondent.

This controversy turns upon the construction to be given to the forcible entry and detainer statute. Appellants contend its effect is none other than the common-law criminal proceeding. That the possession and force contemplated is personal. Under this and other modern statutes the possession may be evidenced by inclosures, buildings and such acts of occupancy as are usually exercised, and the force need not be personal, but such as tearing down fences, entering houses, by breaking windows, or forcing doors, or even possession obtained by fraud or stealth. Proof of prior possession constitutes no defense. Brown v. Berry, 39 Cal. 23 ; Langworthy v. Myers, 4 Ia. 18. The case of Bowers v. Cherokee, 45 Cal. 495, under that particular statute, is not in conflict with this rule. Title and right of possession is in no way

involved in this action. Stephens v. McCloy, 36 Ia. 659; Emsley
v. Bennett, 37 id. 15; Settle v. Henson, Morris, 111; Lorimier
v. Lewis, id. 253; Allen v. Tobias, 77 Ill. 169; Jarvis v. Hamil-
ton, 19 Wis. 205; Newton v. Leavy, 25 N. W. Rep. 39; R. R.
Co. v. Johnson, 7 Sup. Ct. Rep. 340; Myers v. Koenig, 5 Neb.
419; Estabrook v. Hateroth, 34 N. W. Rep. 634; Campbell v.
Coonradt, 22 Kan. 707; Miller v. Tillman, 61 Mo. 316; Dil-
worth v. Fee, 52 id. 130–133; Emerson v. Sturgeon, 59 id. 404–
406. If the party guilty of forcible entry has title or right of
possession, he must deliver up the possession forcibly acquired,
and then litigate his title or right of possession in a proper action.
Mitchell v. Davis, 23 Cal. 381; Brown v. Perry, 39 id. 24.

TRIPP, C. J.   This is an action of forcible entry and detention
brought to recover possession of a quarter section of land with the
buildings and improvements thereon, situated in the county of
Lawrence, Dakota.

The complaint contains two causes of action, or states its cause
of action in two counts.   In the first, plaintiff alleges an unlawful
entry by force and violence, and an unlawful entry by fraud and
stealth, with unlawful detention.   In the second he alleges unlaw-
ful entry by fraud and stealth, and the unlawful detention of the
premises.   The defendants answer without objection to the form
and substance to the complaint, and deny generally the allegations
of each count, and plead in substance that the defendants are law-
fully possessed of the premises, as tenants of one O'Neill, who is
the owner thereof by purchase from the plaintiff; and they fur-
ther plead that an action of ejectment is now pending in the dis-
trict court of Lawrence county, between said O'Neill as plaintiff
and said Murry as defendant, to determine the title to the premises
in controversy in this action.   The answer is verified, and de-
mands that the action be certified to the district court.   The
plaintiff replies, denying generally the allegations of the answer.
The case was tried to a jury, and a general verdict was rendered
in favor of the plaintiff; and a motion for a new trial having
been denied, and a judgment directing the removal of defendants
from the premises having been entered, defendants bring the
cause here for review.

A large number of errors are assigned by the appellant, but we shall only notice those pertinent to the discussion of the case, in the view we have taken of the issues raised by the pleadings and determined by the verdict of the jury.

After the plaintiff had introduced evidence tending to establish possession of the premises, and an unlawful entry by the defendants, the defendant O'Neill, being a witness in his own behalf, was asked by his counsel: *Question.* " Prior to the time you say you were dispossessed in March, how long had you been in the actual possession of that ranch, and from whom did you receive the possession ? " To which question the plaintiff objected as immaterial, and which objection being sustained by the court, the defendant made the following offer: " Defendants now offer to prove by the witness Peter O'Neill that, prior to the 18th day of March, 1883, he had been continuously in the quiet, peaceable and lawful possession of the ranch in question, and was occupying the house thereon by himself and employees since the 15th day of November, 1882, and that on or about the 18th day of March, 1883, the plaintiff, John W. Murry, during the temporary absence of defendant O'Neill, and his employee William Jones, in Deadwood, took possession of the house and premises with force and arms, and held them for a few days in that manner, when he, O'Neill, regained peaceable possession of the house." This offer was objected to as incompetent, irrelevant, and immaterial. The court sustained the objection and rejected the testimony; to which defendants excepted. Subsequently certain testimony was admitted on the part of the defendants tending to show that the plaintiff, Murry, had conveyed the premises to the defendant O'Neill in November, 1881, and that O'Neill had leased the premises back to Murry for one year, ending November, 1882; and that in November, 1882, after the expiration of said lease, the plaintiff, Murry, had quit and surrendered up the possession of said premises to the defendant O'Neill, and that the defendant O'Neill had thereafter and up to the 18th day of March, 1883 (the date of the alleged unlawful entry), held the peaceable and uninterrupted possession of said premises; and that such possession was consented to and acquiesced in by Murry; but that on the 18th day of March, 1883, Murry forcibly entered upon the

premises and ejected the defendant's (O'Neill's) tenants, and that some days thereafter the defendants had peaceably regained possession, and had thereafter continued to hold the same.

The court, upon motion of plaintiff and against the objection of defendants, struck out all that portion of the evidence relating to defendants' possession prior to March 18, 1883, and this ruling of the court was assigned as error.

The defendant also offered in evidence the deed from Murry to O'Neill, and the lease from O'Neill to Murry which were, upon plaintiff's objection, ruled out by the court, and to this ruling the defendants duly excepted.

Did the court err in striking out the evidence relating to the possession of the premises by defendant O'Neill prior to March 18, 1883, and in rejecting the offer of the defendants to prove the same?

This will depend upon the construction to be given to our statute of forcible entry and detainer, under which this action is brought. That portion of the section of our statute upon which this action is founded is contained in the Justices' Code, and reads as follows: Sec. 34. "This action is maintained (1) where a party has by force, intimidation, fraud, or stealth, entered upon the prior actual possession of real property of another and detains the same; (2) where a party, after entering peaceably upon real property, turns out by force, threats, or menacing conduct, the party in possession; or, (3) where he by force, or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise." The plaintiff contends, under the literal reading of the first division of this section, that any person is liable to this proceeding who enters upon the "prior actual possession of another" by force or by fraud or stealth, no matter what his interests or rights may be in the property entered upon, and no matter what otherwise may be the character of the possession entered upon; that a person's own property may be entered upon by another without color of right, and, if the owner subsequently succeed in regaining possession without committing a breach of the peace, yet the unlawful intruder may invoke the aid of the courts and recover the possession from the lawful owner, whenever that possession was regained

by fraud or stealth or force amounting to a breaking of the close. If this is the construction to be given our statute, which is the one which seems to have been followed by the lower court, then there was no error in rejecting the offer, and in striking out the evidence as to the prior possession of the defendant.

Statutes of forcible entry and detainer are of very ancient origin; they date far back into the fourteenth century; they succeeded the wager of battle; they were criminal in character, and were designed to prevent redress of private wrongs by means calculated to disturb the peace and good order of society, in the use of force and violence of a nature to inspire terror and incite personal conflict. These statutes were highly penal in character, and were enforced by indictment of the grand jury or by complaint before a magistrate, and terminated, when unfavorable to the offender, in a fine to the king, and an ouster from the premises unlawfully entered, as a punishment for the offense, and not as a determination of any right of the parties. No title passed or was affected by these proceedings, which were generally summary in character and were prosecuted in the name of the sovereign. In modern times these statutes have undergone great changes; and while generally the summary character of these proceedings remains, yet so great has been the change wrought by legislation that modern statutes of forcible entry and detainer retain but little of their former force and character beyond the name they bear.

In nearly all if not in every state of the Union there is now some civil proceeding in the nature of, or called by the name of, forcible entry and detainer, whereby a party whose possession has been unlawfully entered upon may have the intruder summarily ejected, not for the purpose of punishing the trespasser, but for the purpose of protecting private rights; and such actions are generally prosecuted, not in the name of the sovereign, but in the name of the injured party. It is true that in some jurisdictions these proceedings still retain their criminal characteristics, but in many of the younger states these jurisdictions are separate and distinct. The statute is either made to subserve a double purpose—that is, to protect private rights and to punish public wrongs—or the enactments are separate and distinct in character. To the latter class belongs

the legislation of Dakota. The civil proceeding is found in the Justices' Code, art. 7, while the criminal proceeding is found in and the punishment is prescribed by sections 492, 493 *et seq.* of the Penal Code. The latter is enforced by indictment in the name of the territory, while the former is denominated an "action," and is begun and tried as a civil action in the name of the party interested. So different are the statutes of the different states in character, and so unlike in phraseology and construction, that but little benefit can be derived from their comparison, or from an examination of the decisions of the courts in their intepretation. Our own statute was taken from the two states of Iowa and California, with some original sections added and some very important changes made therein, as we shall hereafter observe.

Section 34, art. 7 of the Justices' Code, which contains the six subdivisions enumerating the cases in which this proceeding will lie, comes from both California and Iowa. Subdivision 1, which provides that the action is maintainable " where a party has, by force, intimidation, fraud, or stealth, entered upon the prior actual possession of real property of another, and detains the same," was taken from Iowa except as modified by our own legislature, as we shall hereafter notice. Subdivisions 2 and 3 are taken from California with no material change. Subdivisions 4 and 5 are taken from Iowa with some modifications immaterial to be noticed here. Subdivision 6 is not found in either statute. Sections 35, 36, 38 and section 40, before amendment in 1881, were taken from Iowa with some modifications; while sections 37, 39, 41 are almost entirely original and quite unlike the statutes of any other state. A comparison of the statutes of Iowa (Code of 1873) and the statutes of California of the same year will make it quite apparent that the person or persons who drafted our statute of forcible entry and detainer had before him or them the enactments of these two states, and that they borrowed from them such parts as they deemed suited to this locality, and rejected the other parts of those statutes which they deemed unsuited. They added new sections and provisos in place of those rejected, the effect of which will be apparent as we proceed. The first remarkable change is in the phraseology of the first subdivision above quoted. The Iowa subdivision reads as follows: (1) " Where the defendant has,

by force or fraud or stealth, entered upon the prior actual possession of another in real property and detains the same." Code, Iowa, 1873, § 3611. The material change, as will be observed, consists in placing the words "of another" after the words "real property" in our statute, instead of after the words "actual possession," as in the Iowa statute, whereby the meaning of the sentence is made to be (if the pronoun "another" is made to qualify as its antecedent the noun immediately preceding, according to the usual rules of construction) that this action is maintainable where a party has entered by force, etc., upon the prior actual possession of another's real property, while the meaning of the Iowa statute must be construed to be that the proceeding is maintainable where a party by force, etc., has entered upon another's prior actual possession ; and if this change was intentional, as it will be presumed to have been, and the word "another" is made to qualify its preceding noun as antecedent, then the difference in the two statutes is radical in this respect: that, while the Iowa statute applies to all real property, and makes the party who enters by force, etc., upon his own as well as upon the real property of another held adversely guilty of this offense, our statute makes the party guilty only who enters by force, etc., upon the real property of another; and while it would be no defense in Iowa to allege and prove that the defendant was the owner of the premises alleged to have been unlawfully entered, it would be a perfect defense under our statute, which confines the remedy to lands of another so entered upon. If this were the only change made in adopting the Iowa and California statutes, the court might feel some hesitancy in employing this usual and natural construction of language, but our legislature did not stop here. It proceeded to emphasize this construction, and to enact in terms that the forcible entry and detainer act, in its enforcement by justices of the peace, should not extend to cases in which the title to real property should in any wise come in question.

Subdivision 7, § 2, Justices' Code, defining the jurisdiction of justices of the peace, provides : "The civil jurisdiction of these courts, within their respective counties, extends * * * (7) to actions of forcible entry and detainer, or detainer only of real property, where the title or boundary thereof in no wise comes in

question;" and to remove any misconstruction that might be placed upon these enumerated powers, it is expressly enacted in the forcible entry and detainer act itself: "Provided that, when the title to or boundary of the real property in any wise comes in question, the case shall be certified to the district court as in this chapter provided." Article 7, § 37, Justices' Code. Section 10 of the chapter above referred to provides that, when it appears that the determination of the action will necessarily "involve the question of title to or boundary of real property in any wise, the justice must suspend all further proceedings in the action," and certify the case to the district court. These provisions are not found in the Iowa or California codes. It is an original provision. It is clearly intended to oust the jurisdiction of the justice when the defendant pleads title, and is intended to confine this remedy to that of protecting the private right of lawful possession, and to give the owner a summary remedy for recovering possession from the intruder or wrongful holder of his real property. To hold otherwise would be to treat the words of the statute requiring the justice to certify the cause to the district court, "whenever the title to or boundary of real property in any wise comes in question," as idle and meaningless. The title to or boundary of real property could never come in question unless it was put in question by a contesting party, either by the pleadings or the evidence offered; and if the contesting party could not raise the question of title or boundary to real property, and if the legislature intended that the owner of real property should not be heard to assert his title in such cases, it was a work of supererogation for it to enact that "whenever such title should come in question" the case should be certified to the district court. No room is left for doubt, however, when we consider the enumerated powers of the justice of the peace. These courts are courts of limited jurisdiction. They have and can exercise no powers except such as are expressly granted or are necessarily implied from powers expressly granted; and, when the legislature granted to justices of the peace power to determine actions of forcible entry and detainer in cases "where the title or boundary of real property in no wise comes in question," it in terms reserved or declined to allow them to exercise jurisdiction in any case where the

contesting party claimed ownership of the property, and in a proper way brought such claim of title in question. Where such title or boundary properly comes in question, the jurisdiction of the justice is ousted, and the case must be certified to the court having jurisdiction. Our forcible entry and detainer act further differs from the acts after which it was modeled in designating the proceedings under it as an " action." Section 33, Justices' Code. And instead of a verdict of " guilty " or " not guilty," as provided by the Iowa statute, our statute provides for a " finding of the court " and " general verdict " of the jury and " judgment " as in other cases, and also for "rents and profits or damages when demanded in the complaint." Laws 1881, chap. 87.

We have no doubt, from a careful examination of the provisions of our statute upon forcible entry and detainer, as well of other sections of contemporaneous statutes as of those subsequently enacted, that the construction intended to be given by the legislature and the construction which should be given to it by the courts is that it is a civil remedy designed to furnish an owner of real property — that is, one having a general or special title sufficient to give him the right of possession — a summary remedy to recover such possession from one who has wrongfully ousted him and is a mere trespasser or intruder without color of right to the premises. And the Iowa supreme court expresses much the same opinion upon their statute which does not contain the sections and provisos we have added. That court says, in Harrow v. Baker, 2 G. Greene, 203 : " In England proceedings of this kind are either by indictment or by a complaint before a justice of the peace, in the nature of a criminal prosecution. That which by their law is made an offense punishable by fine and imprisonment is by ours a civil action to obtain possession."

It is true that this view of the case was not presented to the court below, and it is also true that appellate courts will content themselves with reviewing cases as made by parties in the lower court, and will not review as error what has not been presented to and passed upon by the lower court; but this rule, as we understand it, is confined to irregularities merely occurring at the trial which have resulted in prejudice to the defeated party, and not to matters of jurisdiction affecting the validity of the judgment.

Questions not amounting to mere irregularities, and questions affecting the jurisdiction of the court may be heard for the first time in the appellate court. Says WOODBURY, J., speaking for the supreme court, in Garland v. Davis, 4 How. 143 : " In the examination of this case, a defect has been discovered in the pleadings and verdict, which was not noticed in the court below, nor suggested by the counsel here." And in determining that it was the duty of the court to notice material defects not raised by counsel, the court further on says : " It is the duty of the court to give judgment on the whole record and not merely on the points started by counsel." Citing Slacum v. Pomery, 6 Cranch, 221 ; Baird v. Mattox, 1 Call. 257 ; Roach v. Hulings, 16 Pet. 319. And such has been the holding of this court. Fargo v. Palmer, 29 N. W. Rep. 463 (February Term, 1886) ; Raymond v. Campbell (February Term, 1888) ; Holt v. Van Eps, 1 Dak. 206.

The answer seems to have been framed to raise this issue, and it was duly verified, but the record is silent as to the presentation to the court of this question in any manner, and the lower court does not seem to have passed upon it further than it may be said to have done so indirectly by retaining jurisdiction of the case, and in entering a judgment for the plaintiff. The defendants, when offering the deed and lease in evidence, made the offer upon the ground of showing good faith, and not for the purpose of proving title in the defendant O'Neill. We are, however, of the opinion that the question was one of jurisdiction, and if the justice was not required, from the sworn statements and the allegations of title contained in the answer, to certify the cause to the district court, he was certainly bound to do so when, from offers made and evidence introduced, the question of title to the premises in controversy was squarely at issue between the parties, and was properly presented for its consideration, and that from the time such issue of title was properly presented to the court its jurisdiction ceased, and any subsequent decision or judgment made or rendered by it, except to certify the cause as provided by the statute, was *coram non judice*.

This would perhaps end this case, and save further discussion, but for the suggestion that though the parties submitted to the jurisdiction of the justice of the peace, and he finally determined

the action instead of certifying it, as required in such case, yet the effect was the same so far as it regards the jurisdiction of the district court, whether it came up by certificate of the justice or by appeal, so long as no question was raised in the district court as to the method of bringing it there. While we doubt this position to be well taken, and while the better opinion would seem to be that the district court could exercise no jurisdiction over cases coming up from the justice's court except in a way expressly pointed out by the statute, yet, as the forcible entry and detainer law is now for the first time before this court for construction, and as the question is one of importance to the profession as well as to suitors, and as it has been fully argued upon its merits, both sides tacitly admitting that the district court obtained jurisdiction by the means adopted to remove the action from the justice court, whether the proceeding be an appeal in fact or a certification in effect, we will proceed to examine the statute from this standpoint. The action would then become one of ejectment in effect wherein the title of the parties or their immediate right of possession became the matter in issue; and the offer of defendant to prove prior possession, and the evidence offered of title as well as that struck out, tending to prove ownership and occupancy on the part of O'Neill, were clearly relevant and material, and the rulings of the court, in sustaining plaintiff's motion to strike out and the objections to the testimony offered, were clearly erroneous.

In any view of the law of forcible entry and detainer the extended quiet and peaceable possession of the premises for a period of more than four months, known and acquiesced in by the plaintiff, was clearly competent to be given in evidence to show the character of the possession which the plaintiff relied upon to maintain his action under the facts of this case. It is true that a mere prior possession does not in an action of forcible entry and detainer constitute a defense (Brown v. Perry, 39 Cal. 23); neither does title under most statutes. But the offer here went further than to mere prior possession. It was coupled with the further offer that while so possessed the plaintiff unlawfully ousted him, and that he subsequently and within a few days thereafter recovered peaceable possession. Evidence proving such facts as are contained in this offer was clearly competent to show the character of

plaintiff's possession upon which he relied to maintain his action. The offer was rejected on the ground that it was incompetent, and not upon the ground of bad faith; and though the offer was perhaps fully as broad as the evidence when produced would warrant, as such offers usually are, yet, when the court rejects such general offer as incompetent, the appellate court is bound to presume the facts stated in the offer are true. Scotland v. Hill, 112 U. S. 185, 5 Sup. Ct. Rep. 93.

We cannot adopt the construction of this statute which is contended for by attorneys for the plaintiff, that any actual possession merely of ‘real property is a sufficient basis for this action. That one party may enter upon the peaceable possession of another and wrongfully eject him, and that the person so ejected may not peaceably regain possession, but must resort to an action to expel the intruder, it cannot be that such wrongful intruder may invoke the power of the court to dispossess the rightful occupant who has merely reclaimed his own. If so, then the statute in its construction permits " a party to take advantage of his own wrong" in violation of a fundamental maxim of the law. The offer shows that O'Neill had long enjoyed peaceable possession; that Murry, by force and in violation of law, ousted him; and that he, O'Neill, peaceably regained possession. Murry relies upon such possession to maintain this action. Ought he to be in any better position now, by reason of such wrongful entry, to maintain his action than he would have been in before such entry? Is it possible that Murry, by making the wrongful entry, has obtained a right of recovery against O'Neill for the possession of the premises that he did not have before such entry? If he has, then his wrongful act has conferred this right; and the law, which it is claimed was designed to prevent a breach of the peace, holds out an inducement for its breach, and the court is required to say to all trespassers, if they desire to possess another's property: " You may take it first by force, then give the owner an opportunity to peaceably regain its possession (which he will most probably do), and the courts will then confirm your wrongful act by ousting the rightful possessor, and mulct him in damages and costs for thus presuming to take possession of his own property." The law leads to no such absurdities, and this statute requires of

the courts no such violent and unnatural construction. While the words of the statute give a right of action for a wrongful entry upon another's actual possession, these words must not be construed to include a possession taken by force and violence, and held by threats and menace, or by force and arms, against the rightful claimant striving to regain his possession whenever he may do so, either by precept of the court or by peaceable recaption or entry. It must not be construed to include a scrambling possession alternately gained and lost. The statute was not intended to break down and destroy all the rights of possession and property that have come down to us from the earliest period of the common law. The doctrine of recaption is as old and as well-settled a rule of human action as the right of defense of one's property. Blackstone lays down the rule as follows: " As recaption is a remedy given to the party himself for an injury to his personal property, so, thirdly a remedy of the same kind for injuries to real property is by entry on lands and tenements when another person without any right has taken possession thereof." 3 Bl. Comm. 5. Lord KENYON, as strict a constructionist of the common law as ever sat upon the English bench, states the doctrine thus: " The question is whether a person having a right of possession may not peaceably assert it, if he do not transgress the laws of his country. I think he may, for a person who has a right of entry may enter peaceably, and being in possession may retain it, and plead that it is his soil and freehold, and this will not break in upon any rule of law respecting the mode of obtaining the possession of lands." Taylor v. Cole, 3 Term R. 296. Judge COOLEY states the rule as it now exists as follows: " Of the same nature as the right of recaption is the right which the owner of lands has, when another is wrongfully in possession thereof, to re-enter when he may do so peacefully, and thereafter to exclude the wrong-doer therefrom. This right may exist either where one has gone into possession without right, or where one, having had an estate in, or at least lawful possession of the lands, has had his right terminated by operation of law or by the act of the owner. * * * It must be had in a peaceful manner; and an actual possession, though wrongful, must not be subverted by the employment of force." Cooley, Torts, 57, 58. The law, as

laid down by the American courts, will be found in McDougall v. Sitcher, 1 Johns. 42; Hyatt v. Wood, 4 id. 157; Jackson v. Farmer, 9 Wend. 201; Wood v. Phillips, 43 N. Y. 152; Bliss v. Johnson, 73 id. 529; Tribble v. Frame, 7 A. K. Marsh. 529; Com. v. Dudley, 10 Mass. 409; 4 Kent Com. 118.

In the case of Bowers v. Cherokee Bob, 45 Cal. 495, where the lower court ruled out evidence of the prior efforts of the defendant to regain possession for the purpose of showing the character of the plaintiff's possession, that it was not actual, peaceable, etc., but had been submitted to on the part of the defendant by necessity and not acquiesced in willingly, the supreme court held such testimony competent and proper, and that the possession which has been disturbed and of which the plaintiff complains must be a quiet and peaceable one, acquiesced in and submitted to by the defendant, prior to the wrongful entry; and in delivering the opinion of the court, the learned judge uses the following pertinent language : " If the rule were otherwise, the most deplorable results would ensue. A ruffian might enter a private dwelling without color of right, and in mere wantonness expel its inmates, barricade the doors, and by an exhibition of fire-arms prevent the owner from approaching his own dwelling. The owner might make the most determined and persistent efforts to re-enter his own dwelling, but be as often repulsed by violence or threats; and, if he should ultimately succeed, we apprehend no respectable court would hold that the intruder had acquired a 'peaceable' possession, on which he could maintain an action for forcible entry against the former occupant. If a different rule prevailed, it would operate as a premium upon lawless aggression and an incentive to the grossest outrages; and no one would be safe in his possession of real property, if it was understood to be the law that any ruffian may intrude upon premises in the actual possession of another, maintain his possession by force or menaces for a time, and when expelled by the former occupant, after repeated unsuccessful efforts to regain the possession, might maintain an action for forcible entry, on the plea that he had acquired a 'peaceable' possession."

It is true the California Code uses the word " peaceable," in describing the possession upon which a recovery may be based, in

addition to the word "actual," but, if our statute did not permit the defendant to plead his defense of title, we should be loth to declare that "actual possession" should be construed to include a forcible and wrongful possession, not submitted to or acquiesced in by the defendant. See, also, Wood v. Phillips, 43 N. Y. 152; Powell v. Lane, 45 Cal. 677.

The case of Brooks v. Warren (Utah), 13 Pac. Rep. 175, is very much in point. Brooks and others entered upon the premises formerly occupied by Warren and others as a cattle ranch. The house at the time was open and unoccupied, but contained a few articles of personal property of little value belonging to Warren. Warren claimed to own the house and to have built it, and to have built the corrals and fences on the premises. The case does not disclose what, if any, claim of right Brooks had to the property. He took possession of the premies during the absence of Warren, and claimed the right to maintain his possession by force. During the temporary absence of Brooks from the premises, Warren returned and peaceably took possession, ordering away the person left in charge under Brooks, who surrendered possession without resistance. The justice of the peace, before whom the action was instituted, held that Brooks was "peaceably in the actual possession" at the time of the entry of Warren, but the district court reversed the case, holding that Brooks' entry was forcible and wrongful, and that Warren had the right to retake possession of the property from which he had been wrongfully ousted, when he could do so peaceably; and the supreme court, in sustaining the view of the district court, in which all the justices concur, says: "It seems to have been but another instance so often resorted to of taking the law into one's own hands, and, after meeting defeat, to turn to the law for help." The case bears a very singular analogy to the case at bar. Here O'Neill, as the record discloses, had held uninterrupted and undisturbed possession of the premises for several months. Murry took possession of the premises by force, during O'Neill's absence, and by force sought to maintain such possession. O'Neill, without acquiescing in such possession of Murry, appealed to the courts, but before a determination of his rights subsequently regained peaceable possession, and Murry resorted to the courts, founding his right of

recovery upon his "actual possession" forcibly taken. Without setting up a claim of title to the premises, O'Neill ought to have been permitted to show the character of the possession upon which Murry relied to recover, and the evidence offered and the evidence excluded clearly tended to do this, and should have been admitted; but, under the construction we have given the statute allowing the defendant to assert his title to the premises, the justice, under the pleadings and the testimony offered in evidence, should have certified the case to the district court, and upon trial in the district court such evidence was clearly proper to show the prior possessory right of O'Neill as against the wrong-doer who had entered upon such prior possession by force. The judgment of the lower court is reversed. All the justices concur.